■ RONALD W. JONES et al., Respondents, v LISA A. DAVIS et al., Appellants, and J. ALDEN BENSON II et al., Respondents. [763 NYS2d 136] —Spain, J. Appeals (1) from a judgment of the Supreme Court (Reilly, Jr., J.), entered October 1, 2002 in Schenectady County, upon a verdict rendered in favor of plaintiffs, and (2) from an order of said court, entered March 22, 2002 in Schenectady County, which denied motions by defendants Lisa A. Davis and Town of Rotterdam to set aside the verdict against them.

On July 25, 1998, defendant Lisa A. Davis failed to stop her vehicle at a stop sign at the intersection of First Avenue and Fifth Street in the Town of Rotterdam, Schenectady County, and struck a vehicle operated by plaintiff Ronald W. Jones (hereinafter plaintiff). The stop sign, which is owned and maintained by defendant Town of Rotterdam, was partially obstructed from view by a tree located on property owned by defendants J. Alden Benson II and J. Alden Benson.

Plaintiff and his wife, derivatively, commenced this negligence action against Davis, the Town and the Bensons, and each defendant cross-claimed against all other defendants. Apparently, both plaintiffs' claim against the Bensons and Davis's cross claim against the Bensons were discontinued prior to trial, leaving the Town's cross claim as the only remaining claim against the Bensons. At trial, after counsel for the Town

argued in his opening statement that the evidence would demonstrate that sole responsibility for the accident belonged to Davis, Supreme Court granted the Bensons' motion to dismiss the Town's cross claim against them and, at the close of proof, denied motions by the Town and Davis (hereinafter collectively referred to as defendants) for a directed verdict.

The jury returned a verdict for plaintiffs, determining that plaintiff sustained a serious injury, under both the significant limitation of use and 90/180-day categories (see Insurance Law § 5102 [d]). The jury apportioned liability for the accident 60% to Davis and 40% to the Town and awarded plaintiff $39,643 in past lost earnings, $6,938 in past lost employment benefits, $300,000 in past pain and suffering, $500,000 in future lost earnings, $150,000 in future lost employment benefits, $800,000 in future pain and suffering and $25,000 in future pharmaceutical expenses. On the derivative claim, plaintiff's wife was awarded $25,000 and $100,000 for past and future lost services, respectively. After denying defendants' posttrial motions, Supreme Court entered judgment upon the verdict. Defendants appeal from Supreme Court's judgment on the verdict and the order denying their posttrial motions to set aside the verdict and the Town appeals from the dismissal of its cross claim against the Bensons.

Regarding the jury's determination that plaintiff suffered a serious injury, Davis challenges the legal sufficiency of the trial evidence (see CPLR 4401, 4404 [a]). To qualify under the significant limitation category, a plaintiff must demonstrate—by objective medical evidence—more than a mild, minor or slight limitation of use (see Insurance Law § 5102 [d]; *Gaddy v Eyler*, 79 NY2d 955, 957 [1992]; *Armstrong v Morris*, 301 AD2d 931, 933 [2003]; *Mikl v Shufelt*, 285 AD2d 949, 950 [2001]; *Quinn v Licausi*, 263 AD2d 820, 820 [1999]). The primary dispute related to the serious injury issue centers around the adequacy of the medical evidence presented at trial to demonstrate that plaintiff suffers from reflex sympathetic dystrophy (hereinafter RSD) in his left knee. Plaintiff's treating physician, Shashi Patel, testified that plaintiff is afflicted with RSD and, as a result, is permanently disabled. Patel's conclusion was based on plaintiff's subjective complaints of extreme pain and limitation of use, Patel's observation of symptoms consistent with RSD such as a limited range of motion, extreme tenderness, swelling, skin discoloration and the leg feeling cold to the touch, and plaintiff's failure to respond to physical therapy or otherwise improve during three years of treatment. Arvinder Singh, a physician specializing in pain management

who also treated plaintiff, testified that he had a working diagnosis of RSD, but that he wanted to conduct further investigation before rendering an RSD diagnosis with medical certainty. Singh did corroborate Patel's testimony that plaintiff's symptoms of leg pain, numbness and extreme sensitivity were permanent conditions which are causally related to the accident.

Viewing the evidence in a light most favorable to plaintiffs (*see Butler v New York State Olympic Regional Dev. Auth.*, 292 AD2d 748, 750 [2002]) and, in particular, plaintiff's testimony of debilitating pain and the record evidence of some objective medical findings—i.e., skin discoloration, swelling and surface coldness of the limb—we discern a rational line of reasoning (*see Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]; *Cohen v Hallmark Cards*, 45 NY2d 493, 497 [1978]) upon which the jury was entitled to conclude that plaintiff suffered from a permanent limitation of use in his left knee and leg which was more than "minor, mild or slight" (*Licari v Elliott*, 57 NY2d 230, 236 [1982]; *see Armstrong v Morris, supra* at 932; *cf. Gaddy v Eyler, supra* at 957). In addition, sufficient record evidence exists to support the conclusion that plaintiff is permanently disabled; Patel opined that Jones would not be able to work because his condition prevents standing or walking for extended periods or lifting objects, and the side effects from plaintiff's medications—grogginess and overstimulation—would interfere with his ability to perform his job functions. Patel's conclusions that plaintiff's disability is permanent and causally related to the accident were corroborated by Singh's expert testimony. Accordingly, sufficient evidence exists to support the jury's finding that plaintiff suffers from a serious injury (*see Chapman v Capoccia*, 283 AD2d 798, 800 [2001]; *Rivera v Majuk*, 263 AD2d 841, 841-842 [1999]; *Quinn v Licausi, supra* at 820-821).

Nor are the jury's findings of serious injury against the weight of the evidence (*see* CPLR 4404 [a]). " 'The standard to be employed on a motion to set aside a verdict is whether the evidence so preponderated in favor of the movant that the verdict could not have been reached on any fair interpretation of the evidence' " (*Zeigler v Wolfert's Roost Country Club*, 291 AD2d 609, 610 [2002], quoting *Hess v Dart*, 282 AD2d 810, 811 [2001] [citations omitted]). Although defendants' expert examined plaintiff and testified that plaintiff does not suffer from RSD, it was for the jury to evaluate the conflicting medical opinions and render a credibility determination (*see Calafiore v Kiley*, 303 AD2d 816, 818-819 [2003]).

We also reject the Town's contention that neither Patel nor Singh in fact rendered an opinion with a reasonable degree of medical certainty that plaintiff has RSD and, therefore, that their opinion testimony on the issues of permanency and disability lacked adequate foundation. Singh testified that he "strongly" suspected that plaintiff suffers from RSD while Patel expressed even less reservation in the diagnosis, stating, "I could not make any other diagnosis. To my mind it was RSD." In *Matott v Ward* (48 NY2d 455 [1979]), the Court of Appeals upheld the admissibility of a physician's trial testimony who expressed reservations about testifying to causation with certainty, stating that "the reservations the doctor articulated by his other comments and responses can be seen as candid indications of the limitations inherent in medical opinion and, as such, a useful revelation to the jury in reaching its own conclusion as to the merits of the parties' opposing contentions on causation and permanency" (*id.* at 462). Reading his testimony as a whole, we conclude that Patel "exhibited a degree of confidence in his conclusions sufficient to satisfy accepted standards of reliability" (*id.* at 459; *see Matter of Miller v National Cabinet Co.*, 8 NY2d 277, 282-284 [1960]). Given our conclusion that sufficient evidence was adduced at trial to support the finding that plaintiff suffers from RSD, we reject defendants' related contention that the testimony of plaintiffs' economist was improper inasmuch as it was based on the assumption that plaintiff has RSD.

Likewise, we reject defendants' challenge to the damage award, premised, as it is, on the incorrect assertion that the evidence does not support the jury's determination that plaintiff suffers from RSD and is completely disabled. Nor are we persuaded by defendants' arguments that the damage award is excessive. "The assessment of damages in a personal injury case is primarily a factual determination to be made by the jury, and is accorded great deference unless it 'deviates materially from what would be reasonable compensation' " (*Lolik v Big V Supermarkets*, 266 AD2d 759, 760 [1999] [citations omitted], quoting CPLR 5501 [c]; *see Adams v Georgian Motel Corp.*, 291 AD2d 760, 761 [2002]). Here, the award to plaintiffs was substantial but we find its objective components (i.e., lost wages and benefits) to be supported by record evidence, and the more subjective elements (i.e., compensation for past and future pain and suffering) not so disparate with comparable cases to warrant an exception to the well-established practice of deferring to the jury's calculation of damages (*see Ordway v Columbia County Agric. Socy.*, 273 AD2d 635, 637 [2000]). We have recently addressed and sustained a comparable pain and

suffering damage award for an established case of RSD (*see Valentine v Lopez*, 283 AD2d 739, 743 [2001]).

Finally, we agree with the Town's contention that it was error for Supreme Court to dismiss their cross claim against the Bensons following its counsel's opening statement. The practice of dismissing a complaint at the conclusion of counsel's opening statement is disfavored (*see De Vito v Katsch*, 157 AD2d 413, 416 [1990]), and should only be done if "on the opening it becomes obvious that the suit cannot be maintained because it lacks a legal basis or, when taken in its strongest light, cannot succeed" (*id.* at 418; *see Giroux v Snedecor*, 178 AD2d 802, 803 [1991]; *see also Hoffman House v Foote*, 172 NY 348, 350 [1902]; *Henderson v Henderson*, 172 AD2d 956, 957 [1991]; *Jurewicz v Lucarelli*, 77 AD2d 751, 752 [1980]). Here, counsel for the Town did not make a factual concession which "absolutely preclude[d] recovery" (*Gleyzer v Steinberg*, 254 AD2d 455, 455 [1998]) but, rather, made a claim directed at the ultimate legal question in the case. He stated what he expected the proof to demonstrate that Davis—the driver—was 100% responsible, an assertion which the jury could, and did, ultimately reject. "It is well settled that, in view of the unpredictability of litigation, inconsistency in pleadings, either among claims or defenses, is expressly permitted" (*Scolite Intl. Corp. v Vincent J. Smith, Inc.*, 68 AD2d 417, 421 [1979] [citations omitted]; *see* CPLR 1002, 3014). Thus, in spite of the inconsistency with its primary defense at trial that the obscured stop sign played no role in the accident, the Town should not be precluded from pursuing its "fall back" position that, if the obscured stop sign played any role in the accident, it is attributable to the Bensons' negligence in maintaining their tree, rather than the Town's negligence.

We have considered defendants' remaining contentions and find they are either unpreserved for review or lacking in merit.

Cardona, P.J., Mercure, Peters and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as granted the motion by defendants J. Alden Benson II and J. Alden Benson to dismiss the cross claim of defendant Town of Rotterdam against them; motion denied and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed. Ordered that the order is affirmed, without costs.